IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF MACAULAY OGBEIDE, a/k/a Maxwell, MaCauley Ogbeide, MaCaulay Ogbide, MaCaulay Ogbeidi, Ogbide Macauley, Ogbeide MaCaulay, Ruemu Omatighene, Ruemu Makangilu, Remu Ogbeide, Ruemu Omatighene, Rueme Omatighene, and Ruene Omatighene, | CASE NO.: 220-mj-9 |

**O R D E R**

The Government of the United Kingdom submitted a formal request to the United States seeking the extradition of Macaulay Ogbeide related to a conviction and pending charges against Mr. Ogbeide in the United Kingdom. Doc. 1. The United States filed its Complaint in this matter seeking a provisional warrant and certification under 18 U.S.C. § 3184. Id. The warrant was issued, Mr. Ogbeide was arrested, and the Court held an initial appearance on April 23, 2020. Doc. 12.

Following his initial appearance, Mr. Ogbeide filed a Motion to Set Bond. Doc. 14. The Government filed a Response in Opposition. Doc. 18. On May 5, 2020, the Court conducted a bond hearing by Video Teleconference (to which Mr. Ogbeide consented in writing, doc. 10) with Mr. Ogbeide appearing from the Coffee County Jail, where he is housed. Mr. Ogbeide was represented by appointed counsel at the May 5, 2020 hearing. The Court heard testimony from Mr. Ogbeide, took evidence by proffer from the Government, and heard argument from the Mr. Ogbeide and the Government. At the May 5, 2020 hearing, the Court orally denied Mr.

Ogbeide's request for bond and provided reasons for its ruling.  This Order memorializes the Court's ruling and provides further explanation for the Court's conclusions.

There is a strong presumption in favor of detention and against bond in extradition cases arising under 18 U.S.C. § 3184.  <u>Martin v. Warden, Atlanta Pen</u>, 993 F.2d 824, 827 (11th Cir. 1993).  In order for Mr. Ogbeide to be granted a bond, he must prove that he does not present a risk of flight or nonappearance at future proceedings, he does not present a risk of dangerous to the community, and that "special circumstances" are present and warrant release on bond.  <u>Id.</u>; <u>In re Extradition of Ricardo Alberto Martinelli Berrocal</u>, 263 F. Supp. 3d 1280, 1303 (S.D. Fla. 2017) (discussing authority on required showings for bond in extradition cases).

At the May 5, 2020 hearing, Mr. Ogbeide, with the assistance of counsel, argued he met all three criteria for bond.  Regarding "special circumstances," Mr. Ogbeide stated he wished to petition for asylum in the United States because he fears persecution if he is deported—namely, that he believed he would be tortured or killed if he was returned to the United Kingdom or Nigeria, his home country.  Specifically, Mr. Ogbeide testified that he was part of a secret "cult" that participated in dangerous activity and had killed two of his brothers, and that he feared reprisal from this group if he was extradited.  Mr. Ogbeide declined to disclose the name of the "cult."  Mr. Ogbeide also testified that he suffers physical health and mental health risks if he remains detained, but he provided no details about those risks, other than to state that he may have mental problems that affect his memory.  Regarding dangerousness and risk of flight, Mr. Ogbeide testified that he has a "clean record" and has not "been in any trouble" since he entered the United States in 2017.  Mr. Ogbeide testified that he would appear at all future Court dates, would comply with any conditions imposed by the Court, and would reside in Marietta, Georgia, if released, pending a final extradition hearing.

Regarding "special circumstances," the Government argued that Mr. Ogbeide could just as easily petition for asylum while held in custody in this case. The Government also highlighted that Mr. Ogbeide's threadbare and conclusory statements about a secret, unnamed cult, and a request for asylum based on reprisals from that group, should be given little to no weight. Regarding dangerousness, the Government proffered information related to Mr. Ogbeide's substantial criminal history, which was set out in the NCIC report attached to the Extradition Packet, as well as the Pretrial Services Report. Mr. Ogbeide's criminal history included several charges for crimes involving violence. When Mr. Ogbeide was questioned about his criminal history, Mr. Ogbeide did not deny the allegations, he simply stated he did not remember the criminal activity or criminal proceedings related to that activity. The Government also pointed out that the secret "cult" Mr. Ogbeide claimed to be a part of was a violent organization, further demonstrating Mr. Ogbeide's dangerousness to the community. Regarding risk of flight, the Government highlighted the facts giving rise to the United Kingdom's extradition request—namely, that Mr. Ogbeide fled to the United States in the midst of his trial on charges of attempted rape. Notably, Mr. Ogbeide did not contest these facts; he merely stated that he could not remember fleeing.

After considering the evidence and argument presented at the May 5, 2020 hearing, the Court found that Mr. Ogbeide did not carry his burden as to any of the three elements Mr. Ogbeide must prove to obtain bond. Regarding special circumstances, Mr. Ogbeide's desire to petition for asylum, he failed to demonstrate that remaining in custody will prevent him from doing so, or that the desire to petition for asylum would constitute special circumstances under the law. Mr. Ogbeide's conclusory and unsupported claims about physical and mental health concerns similarly fail to establish special circumstances warranting bond in this case. In re

Berrocal, 263 F. Supp. 3d at 1303 (finding no special circumstances related to health concerns and collecting cases regarding same).  Regarding dangerous, Mr. Ogbeide's criminal history—including the charges and conviction giving rise to this extradition request—demonstrate that Mr. Ogbeide's release on bond would present a danger to the community.  Additionally, I found that Mr. Ogbeide's claim that he could not recall any of his criminal history was not credible.  Ultimately, it is Mr. Ogbeide's burden to establish he would not be a danger to the community, and he failed to carry that burden.  Finally, regarding risk of flight, the evidence submitted at the May 5, 2020 hearing demonstrates Mr. Ogbeide fled from the United Kingdom to the United States—nearly half-way around the world—in the midst of his criminal prosecution for attempted rape.  Mr. Ogbeide did not contradict this evidence, or even dispute it.  This fact alone demonstrates Mr. Ogbeide's release on bond would present a significant risk of flight or nonappearance at future proceedings.  Accordingly, I found that Mr. Ogbeide failed to carry his burden on any of the three required showings for bond, and I **DENIED** Mr. Ogbeide's Motion to Set Bond.[1]

Accordingly, Mr. Ogbeide was, and remains, committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Mr. Ogbeide shall be afforded a reasonable opportunity for private consultation with his

---

[1]  The Court notes Mr. Ogbeide is also subject to a detainer by U.S. Immigration and Customs Enforcement ("ICE"), and, therefore, if he was granted a bond in this case, he likely would not be released, but would be transferred to ICE custody.  At his initial appearance, Mr. Ogbeide stated that he wanted a bond so that he would be transferred to ICE custody because he believed his conditions of confinement would be improved in ICE custody.  At the May 5, 2020 hearing, Mr. Ogbeide's counsel argued the risk of flight and danger to the community was low or nonexistent because Mr. Ogbeide would remain in ICE custody.  However, there is no guarantee that Mr. Ogbeide would remain in ICE custody until the conclusion of this case, due to the ICE detainer.  Moreover, Mr. Ogbeide's "preference" to be held in ICE custody rather than in the custody of the United States Marshal Service does not provide any basis for granting Mr. Ogbeide a bond in this case.

counsel.  On order of a court of the United States or on request of any attorney for the Government, the person in charge of the corrections facility shall deliver Mr. Ogbeide to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**SO ORDERED**, this 12th day of May, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA